UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SCOTT CHARMOLI,

        Defendant.

Case No. 20 CR **20-CR-242**

[Title 18, United States Code,
Sections 1035 & 1347]

---

## INDICTMENT

---

**THE GRAND JURY CHARGES THAT:**

1.     At all times material to this indictment:

    a.     Defendant SCOTT CHARMOLI was a dentist who was licensed in the State of Wisconsin.

    b.     CHARMOLI owned and operated Jackson Family Dentistry in Jackson, Wisconsin.

    c.     CHARMOLI performed a variety of dental procedures on patients, including but not limited to: dental cleanings, fillings, and restorative procedures such as crowns.

    d.     CHARMOLI was an authorized provider for several dental insurance programs, including but not limited to: Delta Dental, Optum, and United Healthcare.

    e.     Delta Dental was a "health care benefit program" as defined by

1

Title 18, United States Code, Section 24(b).

f. Optum was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

g. United Healthcare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

h. CHARMOLI billed the procedures he performed on his patients directly to the insurance companies for which he was an authorized provider.

i. CHARMOLI received payments from those insurance companies as a result of his submission of claims.

j. By submitting claims for insurance payment, CHARMOLI affirmed that the procedure he had performed, and for which he was submitting a claim for payment, was: (1) a necessary procedure; and (2) qualified for coverage pursuant to the insurance company's coverage policies.

### Insurance Coverage for Dental Crowns

k. A dental crown is a restorative dental procedure that replaces a damaged or missing part of a tooth.

l. A dentist performs a crown by removing all damaged or decayed parts of a tooth, manufacturing or purchasing a tooth-shaped replacement, and cementing the permanent replacement over the remaining tooth structure, like a "cap."

m. A crown can be covered by insurance when it is necessary because a tooth cannot be repaired through more conservative means due to extensive

2

caries (cavities) or trauma. For example, insurance will pay for crowns if the tooth needs a large filling for which there is not enough tooth structure, to cover a tooth where a filling would not be strong enough to withstand chewing forces, or to restore a broken or cracked tooth.

      n.    Insurance companies will provide payment for insurance crowns upon the submission of a claim for payment by a dentist, which affirms that the crown was necessary and satisfied the insurance company's coverage requirements.

## Scheme

2.    Beginning by at least January 1, 2016, and continuing through September 31, 2019, in the State and Eastern District of Wisconsin and elsewhere,

**SCOTT CHARMOLI**

knowingly and willfully executed and attempted to execute a scheme to defraud health care benefit programs, namely Delta Dental, Optum, and United Healthcare, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of such programs, in connection with the delivery of and payment for health care benefits, items, and services.

3.    The scheme operated as follows:

      a.    CHARMOLI falsely advised patients that they needed crowns for teeth that had 4 intact cusps or were, in other words, not broken.

      b.    To deceive patients into believing that they needed a crown,

3

CHARMOLI would frequently take an intraoral photograph or x-ray of the tooth and show the patient a line or a spot that he would tell the patient was a fracture or decay that necessitated the crown.

    c. Patients, who believed that CHARMOLI was the expert, accepted his false representations and agreed to the crown procedure.

    d. Upon beginning the procedure, CHARMOLI used his dental hand piece (colloquially known as a "drill") to break off a portion, most often a cusp, of the patient's tooth.

    e. By breaking the patient's tooth, CHARMOLI caused permanent disfigurement and serious bodily injury.

    f. After intentionally damaging the tooth by creating a break, CHARMOLI took, or instructed his dental assistant to take, an intraoral photograph or x-ray, or both, of the broken tooth.

    g. After documenting the damaged tooth, CHARMOLI completed the crown procedure and submitted, or caused to be submitted, a claim for coverage to the insurance company.

    h. CHARMOLI's submissions to insurance varied:

        i. In some cases, CHARMOLI submitted intraoral photographs or x-rays taken before he broke the tooth.

        ii. In other cases, CHARMOLI submitted intraoral photographs or x-rays showing the tooth after he intentionally damaged it.

    i. There were also times when CHARMOLI's insurance coverage

claim was denied. In these cases, CHARMOLI appealed the denial by sending, or causing his employees or agents to send, the insurance company intraoral photographs showing the tooth after he intentionally damaged it.

j. By submitting a claim for coverage to the healthcare benefit program after intentionally damaging the patient's tooth, CHARMOLI made false and fraudulent pretenses, representations, and promises related to a material fact: that the tooth at issue was damaged, in need of a crown, and eligible for crown coverage.

4. As part of this scheme, CHARMOLI performed and billed a large number of crown procedures.

5. For example, between January 1, 2018, and August 7, 2019, CHARMOLI submitted a total of $2,076,439.00 worth of claims for crowns to various healthcare benefit programs. That amounts to over 1,600 crown procedures over a 20-month period, or more than 80 every month.

6. Although CHARMOLI did not recover all of the money for those submitted claims because insurance does not typically pay in full for a crown, CHARMOLI was paid a significant amount for the claims he submitted.

a. For example, between January 4, 2016, and June 28, 2018, CHARMOLI submitted insurance claims to Delta Dental, for crowns using code D2740, totaling $745,570.00. He was paid $318,600.98 on those claims.

b. Similarly, between January 2, 2019, and July 1, 2019, CHARMOLI submitted insurance claims to Delta Dental, for crowns using code D2740,

5

totaling $352,935. He was paid $114,294.35 on those claims.

7. The amounts that were not covered by insurance were often paid out of pocket by CHARMOLI's patients.

## COUNTS ONE THROUGH EIGHT
(Health Care Fraud)

8. On or about the dates set forth below, in State and Eastern District of Wisconsin and elsewhere,

### SCOTT CHARMOLI

for the purpose of executing the scheme described above, and in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following false and fraudulent claims in the table below, which falsely represented that the crowns performed were eligible for coverage by insurance and were medically necessary:

| Count | Approximate Date | Patient | Amount Billed | Amount Paid |
|---|---|---|---|---|
| 1 | 4/24/2019 to 6/28/2019 | C.D. (Tooth 30) | $1,265.00 | $501.00 |
| 2 | 1/28/2019 | B.H. (Tooth 12) | $1,265.00 | $423.00 |
| 3 | 6/17/2019 | E.S. (Tooth 3) | $1,265.00 | $592.00 |
| 4 | 2/11/2019 | T.D. (Tooth 6) | $1,265.00 | $423.00 |
| 5 | 2/11/2019 | T.D. (Tooth 7) | $1,265.00 | $366.00 |
| 6 | 11/14/2017 | C.K. (Tooth 13) | $1,215.00 | $728.00 |
| 7 | 2/27/2018 | C.K. (Tooth 15) | $1,265.00 | $702.40 |
| 8 | 2/27/2018 | C.K. (Tooth 20) | $1,265.00 | $728.00 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT NINE
(False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

9. On or about June 28, 2019, in the State and Eastern District of Wisconsin,

**SCOTT CHARMOLI**

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, specifically asserting that patient C.D.'s tooth needed a crown because the tooth met the applicable criteria for insurance coverage when, in fact, Charmoli damaged the tooth intentionally, in connection with the delivery and payment for health care benefits, items, and services involving United Health Care, a health care benefit program as defined in 18 U.S.C. § 24(b).

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT TEN
(False Statements Relating to Health Care Matters)

**THE GRAND JURY FURTHER CHARGES THAT:**

10.  On or about June 17, 2019, in the State and Eastern District of Wisconsin,

**SCOTT CHARMOLI**

knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, specifically asserting that patient E.S.'s tooth needed a crown because it presented to Charmoli with a natural break when, in fact, Charmoli damaged the tooth intentionally, in connection with the delivery and payment for health care benefits, items, and services involving Delta Dental, a health care benefit program as defined in 18 U.S.C. § 24(b).

In violation of Title 18, United States Code, Section 1035(a)(2).

## FORFEITURE ALLEGATION

1. The allegations contained in Counts 1-10 are re-alleged and incorporated here for the purpose of alleging and giving notice of forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) & 982, and 28 U.S.C. § 2461(c).

2. Upon conviction of any of the offenses alleged in Counts 1-10, the defendant SCOTT CHARMOLI, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from the proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, a money judgment for a sum of money equal to the amount of proceeds obtained as a result of the healthcare fraud.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL:

███████████████████

FOREPERSON
Dated: December 15, 2020

_____
MATTHEW D. KRUEGER
United States Attorney

10