```
                     UNITED STATES DISTRICT COURT

                 FOR THE EASTERN DISTRICT OF WISCONSIN
------------------------------------------------------------------

 UNITED STATES OF AMERICA,        )
                                  )
                    Plaintiff,    )   Case No. 20-CR-242
                                  )   Milwaukee, Wisconsin
      vs.                         )
                                  )   December 30, 2020
 SCOTT CHARMOLI,                  )   10:01 a.m.
                                  )
                    Defendant.    )
                                  )
------------------------------------------------------------------
```

**TRANSCRIPT OF INITIAL APPEARANCE/ARRAIGNMENT & PLEA**
BEFORE THE HONORABLE STEPHEN C. DRIES
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
 For the Plaintiff
 UNITED STATES OF AMERICA:         United States Department of
                                   Justice
                                   By: Julie Stewart & Michael Carter
                                   517 E Wisconsin Ave - Rm 530
                                   Milwaukee, WI 53202
                                   Ph: 414-297-4536
                                   Fax: 414-297-1738
                                   julie.stewart@usdoj.gov
 For the Defendant
 SCOTT CHARMOLI:                   Nila J Robinson
 (Present)                         Nila Robinson & Associates SC
                                   5601 Grande Market Dr - Ste J
                                   Appleton, WI 54913
                                   920-996-0300
                                   Fax: 920-996-7160
                                   Email: Nila@nilarobinson.com

 U.S. Probation Office:            Joshua Hanzlik


 U.S. Official Transcriber:        SUSAN M. ARMBRUSTER, RMR
 Transcript Orders:                Susan_armbruster@wied.uscourt.com
```

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.

TRANSCRIPT OF PROCEEDINGS

Transcribed From Audio Recording

\* \* \*

THE CLERK: Good morning parties. Magistrate Dries is present for Case No. 20-CR-242, United States of America v. Scott Charmoli called for initial appearance, arraignment and plea hearing. May I have appearances please first for the Government.

MS. STEWART: Good morning, Your Honor. Julie Stewart and Michael Carter on behalf of the United States.

PROBATION AGENT: Good morning, Your Honor. Joshua Hanzlik from Pretrial Services.

MS. ROBINSON: Good morning, Your Honor. Nila Robinson for the defense with Dr. Charmoli in person -- I'm sorry, by Zoom.

THE COURT: All right. Good morning, everyone. Let me remind you, as we always do, that this hearing may not be recorded in anyway.

Let me begin by asking Dr. Charmoli, do we have your consent this morning to proceed by video?

DEFENDANT: Yes.

THE COURT: Thank you. That's for your safety and ours as well so we appreciate that. Second question is, have you received a copy of the indictment that the grand jury

1  returned on December 15th?

2  MS. ROBINSON: We do have a copy Magistrate, and I
3  have reviewed it with Dr. Charmoli. We offer pleas of not
4  guilty.

5  THE COURT: All right. Thank you. Let me advise you,
6  in federal court, you have two very important rights. One, is
7  the right to remain silent, and that means nobody can force you
8  to talk about your case. If you do decide to speak, anything
9  you say may be used against you.

10  You also have the right to have a lawyer help you at
11  all stages of these proceedings. And if you can't afford one,
12  one will be provided to you at no charge.

13  Let me turn to one of our prosecutors and ask if they
14  would go over the charges briefly that are contained within that
15  indictment.

16  MS. STEWART: Yes, Your Honor, thank you.
17  Dr. Charmoli is charged in ten counts of a ten-count indictment
18  which alleges a scheme to defraud insurance companies dating
19  back to, at least, 2016.

20  Counts 1 through 8 charge eight executions of that
21  scheme in violation of 18 U.S.C. § 1347. Because each of those
22  eight counts alleges that Dr. Charmoli caused permanent
23  disfigurement and serious bodily injury, each of those eight
24  counts carries a maximum penalty of 20 years imprisonment.

25  Each of these Counts, 1 through 8, also carry a

1  potential fine of $250,000, three years of supervised release
2  and a $100 special assessment.
3          Counts 9 and 10 charge Dr. Charmoli with making false
4  statements relating to a healthcare matter in violation of
5  18UCS1035A two.  Count 9 and 10 each carry a maximum term of
6  imprisonment of five years, a fine of $250,000, three years of
7  supervised release and a $100 special assessment.
8          THE COURT:  All right.  Thank you for that.  I'll give
9  you a speedy trial date of March 10th of next year.  The
10 defendant has entered a not guilty plea.  We'll put that on the
11 record as well.  Our assigned District Judge in this case is
12 Judge Adelman.  He has established a time and a date for
13 pretrial as February 25th at 11:45, trial date of March 8th at
14 10 o'clock.  That was February 25th at 11:45, March 8th at 10
15 o'clock.  If this would go to trial, does the Government have an
16 estimate as to the trial length?
17         MS. STEWART:  Five to seven days, Your Honor.
18         THE COURT:  All right.  Thank you.  And what is the
19 status of discovery at this point?
20         MS. STEWART:  Your Honor, this is a complex case with
21 a tremendous volume of discovery, so we are working on putting
22 it together.  I think at last count we have, at least, 20
23 gigabytes of data that doesn't include the patient files, so
24 we're working on compiling that into a usable format for the
25 defense.  We will need defense to provide, at least, a 32

1  gigabyte flash drive.  We also have a fairly complicated version
2  of the patient files in this case because it involves a dental
3  practice.  And the way we have that currently is on a laptop
4  computer in our office.
5           And so the best way that we can come up with to
6  provide those to defense counsel is to offer them the
7  opportunity to come look at those files on the laptop computer
8  that we have in our office.
9           Alternatively, if they were to provide a laptop
10 computer with 400 gigabytes of space on it, we could make a copy
11 onto that laptop as well or the FBI can do so we couldn't but,
12 and so I will talk to Ms. Robinson about the way that she wants
13 to proceed.  And if defense counsel wants to first come look at
14 the documents on our laptop in our office pending the ability to
15 copy those over, we can make arrangements to do so in a
16 conference room that's sufficiently large to accommodate social
17 distancing as well.
18          We have requested a pretrial conference with Judge
19 Adelman or pretrial conference with either Your Honor or Judge
20 Adelman, whoever will be handling pretrial discovery matters, to
21 sort of set dates and times for that and to address the complex
22 nature of the case.
23          We anticipate being able to provide, at least, the
24 first tranche of discovery the week of January 12th.  But again,
25 this depends on some of these technical issues in this case.

5

1  THE COURT: All right. Thank you. I do have -- Judge
2  Joseph will be your motions judge in this case. I have dates to
3  give you. It sounds like these days will become irrelevant
4  based on what you've said, but the dates for motions would be
5  January 14th, January 25th for responses, and replies on
6  February 1. And you can request a hearing with Judge Joseph to
7  move those dates around. I'm sure that's what you'll end up
8  doing.
9  MS. STEWART: Thank you, Your Honor.
10  THE COURT: Let me remind you under the new Rule 5(f),
11  that the United States is ordered to produce all exculpatory
12  evidence to the defendant under *Brady v. Maryland;* that not
13  doing so in a timely manner may result in sanctions, including
14  the exclusion of evidence, adverse jury instructions, dismissal
15  of the charges, contempt proceedings or sanctions by the Court.
16  We'll also order that the Government disclose
17  appropriate grand jury materials no later than one business day
18  prior to trial.
19  At this point, we would normally discuss the
20  defendant's status prior to his trial. What is the Government's
21  position here?
22  MS. STEWART: Your Honor, the Government has reviewed
23  the Pretrial Report, and we concur with the probation
24  department's determination that there are conditions that would
25  adequately ensure the defendant's appearances and the safety of

1   the community, so the Government is not seeking detention.

2   But the Government does feel strongly that
3   Dr. Charmoli poses a substantial risk to the community and that
4   there is a risk of nonappearance if certain conditions are not
5   imposed, and so the Government would like to discuss those
6   conditions and ask Your Honor to impose them.

7   First, as to the risk of nonappearance.  Dr. Charmoli
8   has disclosed a substantial amount of assets, over $6.8 million.
9   The majority of those assets are highly liquid, 3.3 million in
10  securities and nearly 2 million in stocks.

11  Additionally, the Government is aware that
12  Dr. Charmoli also owns or is the beneficiary of trusts that own
13  several properties or pieces of land in addition to his
14  residence, so his net worth is likely in access of what is
15  stated to probation, and Dr. Charmoli possesses a US Passport.

16  Given these facts, the United States asks this Court
17  order Dr. Charmoli to surrender his passport and not travel
18  outside the Eastern District of Wisconsin as two conditions of
19  bond.

20  The United States also asks that this Court order that
21  Dr. Charmoli not dispose of, transfer or otherwise encumber any
22  asset he owns or in which he has any beneficial or controlling
23  interest in excess of $1,000 without prior authorization from
24  Pretrial Services.

25  The United States also asks that Dr. Charmoli not take

1  out any new credit or loans without prior authorization from
2  Pretrial Services. The later conditions are important for two
3  reasons.
4  First, it enhances the ability of this Court to ensure
5  defendant's appearances for these proceedings.
6  But second, it ensures the defendant does not dispose
7  of any assets that would be necessary to cover the significant
8  restitution and fines to which the defendant will be subject if
9  he's ultimately found guilty of these offenses.
10  The Government contends a significant portion of the
11  defendant's net worth is the result of illegal conduct described
12  in the indictment wherein the defendant purposefully broke his
13  patients' teeth so he could crown them and obtain payment from
14  insurance companies and patients, so the Government requests
15  those conditions be entered by this Court.
16  Second, as to the protection of the public.
17  Dr. Charmoli owns and operates his dental practice, Hartford
18  Family Dental Care. Until October 28th of 2020, Dr. Charmoli
19  was the only dentist working at the practice. On that date, the
20  United States and Dr. Charmoli agreed that he would temporarily
21  suspend his work as a practicing dentist because of the pendency
22  of this investigation that lead to the indictment in this case.
23  The Pretrial Report appears to imply that Dr. Charmoli
24  does not intend to go back to practicing as it indicates that
25  his employment ended on October 28th and states that he's

1   unemployed.

2   If that's the case, the United States believes that's
3   a good thing but also believes that a prohibition on his
4   continued practise should be a condition of pretrial release in
5   this case.

6   The indictment in this case alleges a pattern of
7   extremely concerning facts of significant harm to individuals.
8   It alleges that Dr. Charmoli convinced unsuspecting patients
9   that they needed significant dental procedures such as crowns on
10  their teeth, even though they didn't.

11  It also alleges that once Dr. Charmoli obtained his
12  patients' consent to the crown procedure, he used the dentist
13  drill to purposefully break off cusps of teeth thereby
14  necessitating the crown after all in order to ensure that the
15  patients' insurance company will cover the procedure.

16  Of course, submitting a picture of a manually damage
17  tooth constitutes fraudulently billing to insurance companies,
18  but this case is different and more concerning from a safety
19  standpoint than your typical overbilling health-fraud case.

20  Here not just overbilling but the allegation is that
21  Dr. Charmoli physically damaged his patients' teeth creating the
22  necessity for the crown and alleges that he did so and caused
23  permanent disfigurement and bodily injury, and his practise was
24  widespread.

25  Since the indictment, the Government has been

1  contacted by over 60 additional patients not mentioned in the
2  indictment who strongly believe that Dr. Charmoli purposefully
3  damaged their teeth.  Some of these patients were extremely
4  vulnerable individuals in abusive relationships, recently
5  widowed, survivors of cancer and living paycheck to paycheck
6  scrounging to afford the co-pays required for the unnecessary
7  procedures he was billing.
8              They described to prosecutors not only the physical
9  and financial consequences of Dr. Charmoli's conduct but also
10 the emotional toll it took on them.  The Government believes
11 that allowing Dr. Charmoli to continue practicing posses a
12 significant risk to the community and his patients, particularly
13 given the length of time he's alleged to have engaged in this
14 practise and the widespread nature of it.
15             Moreover, the United States is aware that Dr. Charmoli
16 was able to find a substitute dentist to work at his practise,
17 and he still employs hygienists.  So requiring that he himself
18 not perform dental work as a condition of release would not
19 alter the current status quo, would not prevent him from
20 continuing to make a living, and would not disrupt the
21 continuity of care for patients.
22             The Government also asks that Dr. Charmoli not be
23 permitted to bill insurance companies without the supervision or
24 approval of an independent dentist working at the practice.
25             Those are all the conditions the Government seeks as

10

```
 1  conditions of bond, Your Honor.
 2          THE COURT:  All right.  Thank you.  I'll turn to
 3  Ms. Robinson in a second.  I have to believe though based on the
 4  allegations that insurance companies would --  would not, you
 5  know, fund treatment anymore.  They're pretty much onto this I
 6  have to imagine.  Is that not the case?
 7          MS. STEWART:  Your Honor, it's certainly the case as
 8  to the two insurance companies that are stated in the
 9  indictment.  They are certainly aware.  The Government's not
10  aware however that every dental insurance company is aware.  And
11  so as sort of a built-in suspenders approach, we think it's an
12  important condition that he not be allowed to bill insurance
13  companies without an independent dentist's review.
14          THE COURT:  Thank you.  Let me hear from Ms. Robinson.
15          MS. ROBINSON:  Thank you.  Today is not our day for
16  closing arguments, so I won't try to make one.
17          I will indicate that we look forward to getting
18  discovery in this matter in part because our efforts to obtain
19  information have been stymied from the beginning.  This case
20  begins with Dr. Pako Major failing in his obligation to pay for
21  the contracted amount for a dental practice he purchased and is
22  engaging in at great profit to himself.
23          I'll begin with the last of the concerns.  Hartford
24  Family Dental Care does still exist; although, that is a
25  business that is available for sale.  And frankly, Dr. Charmoli
```

11

1  has no objection to refraining from practicing dentistry.

2  The Government is wrong that it has not destroyed his
3  occupation. In fact, they have. He is out of business. He is
4  not able to earn a living. He is, in fact, unemployed. He can
5  have a locum tenens practice in that business in his place;
6  however, I don't know that that would be regarded as a
7  completely independent person. I would hope that it was as the
8  business needs to continue in order to keep it salable and
9  something that he can dispose of and move on to retirement,
10 which is I think what his future holds for him.

11 This has been a difficult experience, and he's told me
12 that he's frankly frightened to go back to the practice of
13 dentistry.

14 We do not have an objection to him refraining from the
15 practice of dentistry. I do not have a problem with him not
16 personally submitting insurance claims for his work. Obviously,
17 they both disappear together. However, I do think that the
18 business in the hands of a temporary practitioner in his place
19 should be permitted to continue if he wishes.

20 I don't have a problem with him submitting his
21 passport. He travels rarely, has no desire to do so. I do not
22 think his travel should be restricted to the Eastern District of
23 Wisconsin. He has some vacation property elsewhere. He should
24 be permitted to travel within the continental United States if
25 he wishes to do so.

1       This matter has been cooking for a while.  There's
2   been a civil suit that is now I think a year old or so.  The
3   Government's inquiry in their first contact with us began a
4   month or two months ago, and he has been very orderly in his
5   dealings with the Government, with his own lawyers and has no
6   plans to go anywhere.
7       He does, in fact, own property in the state and
8   elsewhere, but primarily in the State of Wisconsin and has close
9   ties both by family and financial to this area.  He has no
10  intention of leaving.
11      I would ask that he not have restrictions placed on
12  him with regard to disposing of property.  Just as the orderly
13  shutting down of business and indeed liquifying some assets, he
14  should be permitted to sell what he wishes to sell as long as he
15  does not dispose of assets by concealing them or gifting them.
16      So for example, a restriction that he might not give a
17  gift to another person in an excessive amount is reasonable;
18  that nothing is sold for less than an appropriate value; that
19  proceeds are accounted for.  Those are reasonable
20  considerations; that there is ample funds here for any
21  restitution that might be ordered.
22      Today, that is a very speculative proposition.  He
23  certainly denies that his hard-earned wealth of many, many years
24  of dental practice at the 40 to 60 hour per week range are the
25  product of anything other than his own diligence, hard work and

13

1 good business acumen.

2 　　　　　I would propose that reasonable conditions are
3 personal recognizance with a requirement that he not travel
4 outside the contiguous United States; that he not personally
5 participate in the practice of dentistry, and that should be
6 enough to give adequate respect to the concerns of the public in
7 any criminal case but also to permit him to go about ordinary
8 life unless and until we have a trial.

9 　　　　　THE COURT: All right. Thank you, Ms. Robinson. Is
10 there a specific area where his vacation properties might be
11 that we can narrow this down a bit?

12 　　　　　MS. ROBINSON: Most of them are in Wisconsin with the
13 exception of a home in Arizona that's disclosed in the Pretrial
14 Service Report that he has a partial interest in.

15 　　　　　THE COURT: All right. Let me just ask Ms. Stewart.
16 There's a lot going on there. Do you have a comment on any of
17 that?

18 　　　　　MS. STEWART: Only as to the disposition of assets,
19 Your Honor. The Government didn't ask that Dr. Charmoli be
20 prohibited from disposing of assets. The Government simply asks
21 that Dr. Charmoli be prohibited from disposing of assets or
22 transferring them without prior approval from Pretrial Services.

23 　　　　　In these kinds of fraud cases, that is often a
24 condition that is ordered. Dr. Charmoli can dispose of assets
25 if doing so is appropriate. We simply ask that Pretrial

Services be involved in that discussion to ensure that the disposition is being done appropriately and not in a way that liquidates assets such that there is not availability for the significant restitution and fines that are likely in this case.

THE COURT: All right. Thank you. It sounds like we're mostly in agreement here despite some ostensible disagreements. The fact that he has a high net worth I don't think makes him inherently a flight risk. People don't tend to flee when they are facing allegations like this that don't carry massive penalties where he's not facing multiple decades in prison or something like that, so I think travel restriction to Wisconsin and Arizona would be appropriate.

The surrender of the passport would always be required in a case like this, and he's agreed that he will not personally return to a dental practice. I think if he's involved in ownership, I think that's fine or managing a business but not personally practicing as a dentist I think is the key condition that has been agreed to here, and I think that's appropriate.

And as the Government says, pre-approval for transferring any assets by the Pretrial Services Officer, I think that will adequately secure those assets in the event they will be subject to restitution in the future. Is there any further condition that I haven't discussed?

PROBATION AGENT: Your Honor, I would just ask if pretrial reporting would be necessary? Since he'll have to do

15

1   some sort of reporting to us on the transfer of assets, I'm
2   wondering if he would need to report to Pretrial Services as
3   directed conditioned with that then?
4             THE COURT:  I think that would make sense.  I will
5   order he report to Pretrial Services as directed by the PTS
6   Officer.
7             MS. STEWART:  That addresses all the Government's
8   concerns, Your Honor.  Thank you.
9             THE COURT:  Very good.  Anything further then this
10  morning?
11            MS. ROBINSON:  No.  Thank you.
12            MS. STEWART:  Not from the Government, Your Honor.
13            THE COURT:  All right.  Thank you everyone.  Have a
14  good day.
15      (Whereupon proceeding was concluded.)

C E R T I F I C A T E

I, SUSAN ARMBRUSTER, RMR, Official Court Reporter and Transcriptionist for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of the audio Zoom file provided in the aforementioned matter to the best of my skill and ability.

Signed and Certified December 31, 2020.

/s/Susan Armbruster

Susan Armbruster

> Susan Armbruster, RPR, RMR
> United States Official Reporter
> 517 E Wisconsin Ave., Rm 200A,
> Milwaukee, WI 53202
> Susan_Armbruster@wied.uscourts.gov