# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                       **Case No. 20-CR-242**

**SCOTT CHARMOLI**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Scott Charmoli, a dentist, with health care fraud and related offenses arising out his alleged scheme to bill for unnecessary crown procedures. The case is set for final pre-trial on February 10, 2022, and trial on March 7, 2022. In this order, I address the government's consolidated motion in limine. The government makes eight requests, which I address in turn.

**First**, the government seeks to prohibit mention of the potential punishment or collateral consequences defendant faces if convicted. (R. 45 at 3-4.) Defendant agrees the jury should reach its verdict without regard to such consequences. (R. 46 at 2.) This request is granted.

**Second**, the government seeks to preclude argument and inquiry supporting jury nullification. (R. 45 at 4.) Specifically, the government seeks to preclude the defense from making arguments based on defendant's personal or family hardship; the motives of investigating law enforcement officers; defendant's lawful conduct/prior good acts, such as correctly billing for other dental procedures; or defendant's desire to help his patients by defrauding insurers. (R. 45 at 5-9.)

"Although every jury has the de facto power of nullification due to the unreviewable

nature of a judgment of acquittal, a defendant has no right to argue for the jury to disregard the law." United States v. Wade, 962 F.3d 1004, 1012 (7th Cir. 2020). In his response, defendant asks the court to note for the record his objection to the government's request for an order barring evidence or arguments designed to induce jury nullification. However, he acknowledges the Seventh Circuit's position on nullification and will abide by the court's order. (R. 46 at 2.)

Defendant goes on to argue that the government's request exceeds the bounds of what can be considered jury nullification and asks the court to deny the request barring him from presenting evidence regarding law enforcement motives, his lawful conduct, or his reasons for taking certain actions. (R. 46 at 2.) He contends that questioning about the circumstances prompting the FBI to investigate him may be relevant to bias and credibility. (R. 46 at 2-3.) He further contends that since the government will introduce evidence about the reasons he gave for certain actions, he must be free to argue the jury should draw a different inference from what the government suggests. (R. 46 at 3.)

Given the generality of the arguments presented in the parties' submissions, it is impossible to issue a broad ruling covering all aspects of this request. Rather, the request must be considered in the context of specific questions and arguments.

**Third**, the government seeks to bar discovery requests or comments regarding discovery in the presence of the jury. (R. 45 at 9.) The government contends that such requests may create the false impression that it has suppressed information. It thus seeks an order precluding the defense from requesting discovery from witnesses or opposing counsel, moving the court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. (R. 45 at 10.)

Defendant asks the court to deny the request as vague and overbroad; instead, the court

should rule in the context of a specific objection at trial. (R. 46 at 3.) Defendant worries that a broad pre-trial ruling could bar questions or argument regarding the presence or absence of certain evidence or records. (R. 46 at 4.)

I need not issue a broad ruling on this request either. Defendant should refrain from making discovery requests in front of the jury, but he may comment on the evidence. I will otherwise rule in the context of specific arguments/questions at trial.

**Fourth**, the government seeks to bar defendant from defining reasonable doubt. (R. 45 at 10-11.) The defense does not object. (R. 46 at 4.) This request is granted.

**Fifth**, the government moves to preclude argument intended to arouse speculation about uncharged co-conspirators. (R. 45 at 11.) The government notes that other persons worked at defendant's dental practice, some of whom may testify at trial, and it worries that the defense may try to distract the jury by inviting speculation as to why these other people were not charged. (R. 45 at 12.) The government seeks an order preventing defendant from making any argument or pursuing any line of questioning that invites the jury to consider or speculate about the reason that other individuals employed by the practice were not charged and to order defendant not to argue that the government's charging decisions with respect to other individuals involved in the practice proves that defendant did not violate the law. (R. 45 at 12-13.)

As the government notes, the Seventh Circuit has approved instructions cautioning the jury not to speculate about other persons not on trial, see United States v. O'Connor, 656 F.3d 630, 645 (7th Cir. 2011), and the exclusion of evidence that another person arrested with the defendant was not charged, United States v. Young, 20 F.3d 758, 765 (7th Cir. 1994). In

3

response, defendant asks the court to deny this request as vague and overbroad. He notes that the role of defense counsel at trial is to encourage speculation and raise the prospect of reasonable doubt. (R. 46 at 4.) However, he fails to address the cases cited by the government or otherwise explain why evidence/argument of this sort would be relevant. I will conditionally grant this request. If, at trial, defendant wishes to make an argument of this sort he may raise the issue at sidebar. The court can then rule in the context of a specific factual situation.

**Sixth**, the government moves to admit evidence of the entre fraudulent scheme. (R. 35 at 13-14.) As the parties note, this issue was the subject of a motion in limine filed by the defense seeking to exclude evidence of 53 additional crown procedures. (R. 46 at 5.) My ruling denying the defense motion (R. 41) in part will control.

**Seventh**, the government moves to exclude cumulative expert testimony. The government notes that the defense has submitted report from three experts. While they have slightly different backgrounds and current states of practice, each opines on the same set of facts and presents nearly identical conclusions. The government argues that presentation of all three would be needlessly cumulative and a waste of judicial time and resources. (R. 45 at 14.) The government thus seeks an order limiting the defense to one of the three. (R. 45 at 14-15.)

The government relies on Fed. R. Evid. 403, which permits the court to exclude relevant evidence if its probative value is outweighed by a danger of "wasting time" or "needlessly presenting cumulative evidence." See Bowman v. Corr. Corp. of Am., 350 F.3d 537, 547 (6th Cir. 2003) ("A district court is free to exclude any expert testimony, including testimony of an

4

Case 2:20-cr-00242-LA   Filed 02/09/22   Page 4 of 12   Document 58

announced expert, if the testimony is cumulative or redundant under Fed. R. Evid. 403.") (internal quote marks omitted); Blair v. Eagle-Picher Industries, Inc., 962 F.2d 1492, 1500 (10th Cir. 1992) ("We have noted previously that there can be no doubt of the power of the trial court, in the exercise of a sound and reasonable judicial discretion, to limit the number of expert witnesses. . . .") (internal quote marks omitted); United States v. Garza, 664 F.2d 135, 141 (7th Circ. 1981) (excluding evidence as cumulative under Rule 403).

The government concludes that these principles apply here: all of the defense experts provide the same opinion; there is nothing to be gained from needlessly prolonging the trial by permitting three virtually identical direct and cross examinations, where one would suffice; and doing so risks having the jury resolve competing expert testimony by "counting heads" rather than evaluating the experts based on their credibility and the quality of their testimony. Therefore, unless defendant can identify a reason for needing three experts—a basis missing in their reports—the court thus should limit defendant to one. (R. 45 at 17.)

In response, defendant cites United States v. Gardner, 211 F.3d 1049, 1055 (7th Cir. 2000), where the court permitted testimony from multiple experts in an arson case. (R. 46 at 6.) The court noted that evidence is cumulative when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates. Id. The court found that the evidence was not cumulative in that case because the expert at issue, Dr. DeHaan, responded to the defense's cross-examination of the government's earlier experts:

During the cross-examinations of the Government's other expert witnesses,

5

> Tankersley and Briggs, defense counsel suggested that the fire was not the result of arson but was caused by an electrical problem. The cross-examination of Tankersley demonstrated that he had not determined personally that the electrical system was not the cause of the fire but that he had based his opinion on the conclusions found in the reports of other scene investigators. The cross-examination of Briggs questioned his method for concluding that the electrical wiring did not cause the fire. It also noted that his written report lacked a conclusion that ruled out the electrical system. Because the defense had placed in question, through cross-examination, the thoroughness of the other experts' investigations, the district court certainly did not abuse its discretion in allowing Dr. DeHaan to testify on the same issue.

Id. Defendant further notes that in Bowman, 350 F.3d at 547, cited by the government, the court permitted multiple experts with distinct areas of expertise. See also United States v. Galecki, 932 F.3d 176, 186-87 (4th Cir. 2019) (holding that the district court erred in finding testimony cumulative where the expert at issue could not have been impeached on the same basis as the others).

Defendant contends that each of his experts possesses expertise in distinct areas, has evaluated the procedures at issue in this case from unique professional perspectives, and will testify as to different aspects of the acts at issue. (R. 46 at 7.) "The fact that each expert reviewed similar materials (patient records and insurance claims) and reached similar conclusions (that the crown procedures at issue were medically appropriate) does not render their testimony cumulative, because each arrived at their conclusions through different paths." (R. 46 at 8.)

Based on the defense submission, it appears that the probative value of this evidence is not substantially outweighed by the danger of delay and needlessly presenting cumulative evidence. The government's concern about "counting heads" can be addressed through the

6

jury instructions.[1]  This request is denied.

**Eighth**, the government seeks to preclude introduction of defendant's hearsay statements through expert testimony. (R. 45 at 17.)  While the government is permitted to introduce a defendant's out-of-court statements under Fed. R. Evid. 801(d)(2), the Rule does not permit a defendant to introduce his own exculpatory statements. See United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them.").

The government contends that in this case defendant is seeking to smuggle his own self-serving, exculpatory statements in through his experts. Rule 703 addresses expert reliance on hearsay:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

The government contends that the defense experts here rely on defendant's self-serving

---

[1] Defendant argues that if the court permits the government to present evidence of the 53 additional crown procedures the defense will be required to obtain expert review, which will be feasible only through a division of labor.  Such testimony would not be cumulative. (R. 46 at 8-9.) As indicated, I have denied in part the defense motion in limine seeking to exclude this evidence.

7

statements regarding why he took and used intra-oral photographs of teeth (i.e., "patient education"), teeth the government alleges defendant intentionally damaged to justify insurance coverage for dental crowns. (R. 45 at 18.) None of their reports indicate any basis for their conclusions regarding the existence of these photographs beyond defendant's statements, and none explain the way in which such statements by a defendant are generally relied upon by experts in the field. (R. 45 at 19.) The government argues that defendant's statements regarding the intra-oral photographs at issue are not properly relied upon by these experts, nor are they independently admissible at trial. The government thus moves the court for an order precluding defendant's experts from opining as to the rationale for the existence of these photographs and introducing evidence of defendant's out-of-court statements at trial. (R. 45 at 19.)

The government notes that in determining whether an expert properly relied on certain facts "the trustworthiness of the underlying data is not irrelevant." Gong v. Hirsch, 913 F.2d 1269, 1273 (7th Cir. 1990) (internal quote marks omitted); see id. at 1273 n.3 (citing Ricciardi v. Children's Hosp. Medical Center, 811 F.2d 18, 20, 24-25 (1st Cir. 1987) (district court did not abuse its discretion in prohibiting plaintiff's medical expert from relying on consulting doctor's handwritten note in a medical chart that described accidental episode that arguably caused plaintiff's injury; consulting doctor did not have personal knowledge of the incident in question and could not recall specifically where he obtained the information he recorded in the note); United States v. Grey Bear, 883 F.2d 1382, 1392-93 (8th Cir. 1989) (Rule 703 does not allow medical expert to "circumvent the rules of hearsay" by stating merely that the opinions of two other doctors, who were not present, agreed with his own); Faries v. Atlas Truck Body Mfg. Co., 797 F.2d 619, 624 (8th Cir. 1986) (expert opinion that was based on information provided by

8

an interested witness was not sufficiently reliable under Rule 703); In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1223, 1243-47 (E.D.N.Y. 1985) (medical expert's opinion on causation based on self-serving symptom checklists prepared by plaintiffs would not be admissible under Rule 703 because no expert would reasonably rely on such information), aff'd, 818 F.2d 187 (2d Cir. 1987)). Here, the defense experts have not indicated how the statements of a dentist accused of insurance fraud are reasonably relied on in formulating an opinion as to why that dentist took certain intra-oral photographs. The government argues that the reliance is even more questionable given the other evidence provided to the defense in discovery, including the statements of dental assistants who worked with defendant and will testify that defendant did not show the intra-oral photographs to patients for "patient education"; statements from defendant's patients who indicated that they were never shown photographs of their teeth after crown preparation work began; and defendant's dental records, none of which state that he took the intra-oral photographs for patient education or that he showed them to his patients. (R. 45 at 20.) The experts do not address this evidence but simply parrot defendant's self-serving statements. (R. 45 at 20-21.)

Finally, the government notes that even if an expert could reasonably rely on hearsay to form an opinion, Rule 703 does not permit an expert to simply regurgitate hearsay evidence in the form of an opinion in order to make otherwise inadmissible evidence admissible. (R. 45 at 21, citing Loeffel Steel Prod., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) ("[W]hile Rule 703 was intended to liberalize the rules relating to expert testimony, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").)

9

In response, defendant concedes that the experts rely in part on his statements, and that these statements are hearsay. However, he contends that Rule 703 allows expert opinions based on otherwise inadmissible evidence where, as here, experts in the field would reasonably rely on that sort of evidence in forming an opinion on the subject. (R. 46 at 11.)

Defendant further contends that, under Rule 703, otherwise inadmissible evidence may nevertheless be disclosed to the jury if that evidence was reasonably relied upon when forming an expert opinion and its probative value substantially outweighs any prejudicial effect. (R. 46 at 12.) In Gong, 913 F.2d at 1273, the Seventh Circuit noted that "Rule 703 generally permits experts to state the underlying basis of their opinions (if the information is of the type reasonably relied upon by experts), but that the underlying information still is subject to exclusion under the balancing test of Rule 403." In United States v. McCollum, 732 F.2d 1419, 1422-23 (9th Cir. 1984) (internal citations and quote marks omitted), the court noted:

> This circuit has held that an expert witness may be permitted to state an opinion based on otherwise inadmissible hearsay when the source of information is of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject. Where the nature of out-of-court statements made by the defendant form the basis for an expert's opinion concerning the defendant's mental state, the expert may be permitted to recite the out-of-court statements.

Defendant contends that, while the government argues the jury should not believe that he took the intra-oral photos for the purpose of patient education, these arguments do not go to the admissibility of the experts' opinions. He further states that his experts will testify that dentists regularly take intra-oral photos mid-treatment for purposes of patient education and for record-keeping. (R. 46 at 13.)

While the government's arguments are not without force, I will deny its request to exclude. The Seventh Circuit had cautioned against "an overly demanding gatekeeping role

10

for the district court." Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020 (7th Cir. 2000). Circuit "case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." Id. In Cooper, for instance, a medical expert (Dr. Richardson) in a personal injury action relied in part on the plaintiff's (self-serving) statements about his medical history and the fall that allegedly caused his chronic pain syndrome ("CPS"). Id. While the record contained reasons for questioning the plaintiff's credibility, id. at 1019-20, the Seventh Circuit held that the district court erred in excluding the expert's testimony, explaining:

> The possibility of Mr. Cooper's CPS being attributable to a factor other than the fall is a subject quite susceptible to exploration on cross-examination by opposing counsel. Similarly, the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation. Therefore, Nelson's contention that other conditions of Mr. Cooper's might have caused his CPS goes to the weight of the medical testimony, not its admissibility. Notably, on cross-examination of Dr. Richardson, Nelson elicited testimony that Dr. Richardson had really done no investigation into the causes of Mr. Cooper's CPS; Nelson presented evidence that Mr. Cooper suffered physical maladies before July 7, 1992; it also presented evidence that Mr. Cooper had been less than truthful in the history he submitted to Dr. Richardson. This evidence would permit a jury to conclude that the fall did nothing to cause CPS. The proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof. Daubert acknowledged the continuing vital role that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, are to play in the trier of fact's ultimate evaluation of admissible but shaky evidence. All of these tools were utilized by Nelson.
>
> Here, a physician employed the accepted diagnostic tool of examination accompanied by physical history as related by the patient. In this case, this methodology was acceptable under the gatekeeping requirements of Daubert. We are aware that, although Daubert is concerned primarily with the issue of methodology, not conclusions, conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. Although a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered, no such suggestion has been made here. Accordingly, in the circumstances presented here, Dr. Richardson's

11

> testimony should not have been excluded under Daubert solely on the ground that his causation diagnosis was based only on his patient's self-reported history.

Id. at 1021 (internal citations and quote marks omitted).

I will follow that approach here. The government may cross-examine the experts regarding the reliability of the information defendant provided, in addition to presenting contrary evidence.

**THEREFORE, IT IS ORDERED** that the government's motion (R. 45) is granted in part and denied in part, as stated herein.

Dated at Milwaukee, Wisconsin, this 9th day of February, 2022.

>                     /s/ Lynn Adelman
>                     LYNN ADELMAN
>                     District Judge