# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                        **Case No. 20-CR-242**

**SCOTT CHARMOLI**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Scott Charmoli, a dentist, with health care fraud related to billing for unnecessary crown procedures. The government alleges that defendant fabricated justifications for the crown procedures, including using a dental drill to break patients' teeth and then taking a photo or x-ray to submit to the insurance provider. The parties anticipate presenting expert testimony regarding the appropriateness of these procedures, and the court set a December 13, 2021, deadline for disclosure of expert reports.

The case is set for final pre-trial on February 10, 2022, and trial on March 7, 2022. In this order, I address defendant's motion in limine to exclude undisclosed expert testimony.

**I.**

Defendant notes that on February 1, 2022, he received a report of a January 28, 2022, interview with Dr. Ben Heffter, a dentist. (R. 53 at 1.) The report recounts Dr. Heffter's education and background, his knowledge of crown procedures, his review of dental records and patients at issue in this case, and his opinions regarding the medical necessity of crown

procedures defendant prescribed.[1]  (R. 53 at 1-2.)  Defendant contends that the report thus contains the sort of information to which only a qualified expert could testify.  However, the government did not disclose Dr. Heffter as an expert witness consistent with the court's deadline.  Defendant therefore argues the government should be barred from introducing Dr. Heffter as a witness or presenting to the jury any information from the January 28 report.  (R. 53 at 2.)

The government responds that it does not intend to call Dr. Heffter as an expert witness to opine on the fraudulent nature of crown submissions at issue in this case.  Rather, Dr. Heffter will testify as to his personal observations and experiences at Jackson Family Dentistry and to provide background information on the circumstances that led to the investigation.  The government anticipates his testimony will be quite short.  The government further argues that, even if Dr. Heffter's proffered testimony is expert opinion, exclusion is not the proper remedy

---

[1] Defendant has provided under seal a copy of the report.  (R. 55.)  The report indicates that in July 2019 Dr. Heffter started working at Jackson Family Dentistry (R. 55 at 1), the practice formerly owned and operated by defendant (R. 1 at 1).  Defendant left the practice one or two weeks after Dr. Heffter started.  (R. 55 at 1.)  Dr. Heffter indicated that after defendant left he assumed care of many of defendant's patients.  Dr. Heffter noticed that defendant had prescribed crown procedures for a significant number of patients who did not need crowns, which Dr. Heffter subsequently canceled.  (R. 55 at 2.)  Dr. Heffter reviewed the factors that could predicate a crown procedure.  (R. 55 at 2-3.)  Dr. Heffter further indicated that in August 2019 he spoke with the current owner of the practice, Dr. Major, regarding his concern about excessive crown procedures.  He and Dr. Major also reviewed an intra-oral image of a tooth that appeared to have been intentionally drilled, which they found alarming.  They also learned, during discussions with staff, that defendant took intra-oral photos during a procedure, rather than before as Drs. Major and Heffter did.  (R. 55 at 3.)  Finally, Dr. Heffter discussed a number of specific crown procedures prescribed by defendant which he reversed, as well as a crown installed by defendant which he replaced.  (R. 55 at 4.)  In a previous filing, defendant alleged that Dr. Major precipitated this prosecution by sending the government dental records of some of defendant's former patients reflecting what Dr. Major believed to be unnecessary procedures, and that Dr. Major did so in the context of a financial dispute between the two over the sale of the practice from defendant to Dr. Major.  (R. 41 at 3-6.)

2

because defendant has suffered no prejudice from being alerted to the testimony five weeks before trial, particularly given that defendant has hired three dental experts to assist in his defense. (R. 56 at 2.)

**II.**

Witnesses may testify about matters within their personal knowledge, Fed. R. Evid. 401 & 602, and may provide lay opinions based on their perceptions, Fed. R. Evid. 701. See United States v. Bowling, 952 F.3d 861, 868 (7th Cir. 2020) ("Lay testimony that is in the form of an opinion is permissible if it is rationally based on the witness's perception, helpful to understanding the witness's testimony, and not based on specialized knowledge."); United States v. Locke, 643 F.3d 235, 239-40 (7th Cir. 2011) ("The Federal Rules of Evidence limit—but do not bar—lay witnesses' ability to testify as to their opinions and inferences, even about ultimate issues in the case. In some situations, even lay opinion testimony as to the mental state of another is indeed competent, and it is within the discretion of the trial judge to determine whether such testimony is helpful under Rule 701 and appropriate under Rule 403's balancing test[.]") (internal citations and quote marks omitted). Courts have further held that even though a witness's specialized knowledge might inform his or her mental state, testimony based on personal observation is still lay testimony under Rule 701. See, e.g., United States v. Hilliard, 851 F.3d 768, 780-81 (7th Cir. 2017) (agent testifying about surveillance results); United States v. Oriedo, 498 F.3d 593, 602 (7th Cir. 2007) (agent testifying about controlled buys); United States v. Hofschulz, No. 18-cr-145-pp, 2021 U.S. Dist. LEXIS 235634, at *41-43 (E.D. Wis. Dec. 9, 2021) (nurse practitioners employed at clinic run by the defendants testifying about their observations).

Consistent with these cases, the government argues that the fact that a witness has

specialized training or expertise does not mean he testifies as an expert whenever his testimony touches on his professional experience. (R. 56 at 3-4.) The government explains that in this case it does not intend to elicit any opinion from Dr. Heffter about whether the teeth charged in the indictment or identified in the bill of particulars needed a crown. Nor does it intend to ask Dr. Heffter to apply his expertise or knowledge to opine as to whether any insurance claims submitted by defendant were false or fraudulent. And it does not intend to show Dr. Heffter any photographs of damaged teeth in order to solicit an opinion as to whether such teeth were manually damaged outside the standard course of dental practice. Instead, the government will call Dr. Heffter to testify to his own personal observations of patients that he saw at Jackson Family Dentistry. The government will elicit from Dr. Heffter the facts of what happened: he noticed a pattern of patients coming in for crown procedures that he did not think were necessary, he declined to perform the pre-scheduled crowns, and he alerted the owner of the practice about his concerns. (R. 56 at 4.) The government contends that while Dr. Heffter's education and experience informed his mental state, his observations, and his actions, the fact that Dr. Heffter is a dentist does not preclude him from testifying as a lay witness about his personal knowledge. (R. 56 at 4-5.)

The government contends that Dr. Heffter's personal observations, and the subsequent events that led to this investigation, are relevant and admissible. Dr. Heffter's observations corroborate the testimony of the dental assistants who observed defendant's aggressive crown recommendations, as well as the testimony of patients who felt pressured to receive crowns. The government contends that Dr. Heffter's testimony is also foundational: it provides background regarding the initiation of the investigation at issue, which is made all the more relevant given defendant's apparent intent to explore bias in the government's investigation

4

initiated by the financially biased whistleblower Dr. Major. (R. 56 at 5.)

**III.**

Some of the information set forth in the January 28 report plainly implicates specialized knowledge, e.g., Dr. Heffter's discussion of the factors involved in justifying a crown (R. 55 at 3-4) and his discussion of specific patient procedures he deemed unnecessary or improperly done (R. 55 at 4). Other portions are hearsay, e.g., what patients (R. 55 at 2) and staff (R. 55 at 3) told Dr. Heffter.

To the extent Dr. Heffter's testimony is limited to what he saw and did while working at Jackson Family Dentistry, and avoids opinion on the propriety of specific procedures, it would appear to fall on the lay side of the line. See Hofschulz, 2021 U.S. Dist. LEXIS 235634, at *42-43:

> The nurse practitioners testified based on their own knowledge. They testified to their observations through the lens of their education and training, offering their views about how the defendants' clinic operated during their employment and—perhaps more important—the concerns they had shared with the defendants. The nurse practitioners had specialized knowledge, but they testified about things they had seen and heard. They testified as fact witnesses, within the context of their understanding of their jobs.

I will at the final pre-trial discuss with the parties the extent to which the jury should be apprised of the events leading to the government's investigation and prosecution. The government contends that Dr. Heffter's testimony is relevant given defendant's intent to explore bias in the investigation based on the financial motivations of the whistleblower, Dr. Major. The government has previously indicated Dr. Major will not offer opinions in this case (R. 42 at 3), but it is unclear whether he will testify as a lay witness. (R. 45 at 11, noting that Jackson Dental employed dental assistants/hygienists, office managers/receptionists, and other dentists (including Drs. Major and Heffter), and that "some of these individuals may testify".) This

criminal trial should not detour into the contractual dispute between defendant and Dr. Major, nor should it dwell unnecessarily on the circumstances leading to the indictment.

**IV.**

As a fallback, the government contends that even if Dr. Heffter is deemed an expert, exclusion is not the appropriate remedy, as defendant has been advised of his testimony over a month before trial;[2] the proffered testimony covers the same substantive information defendant has known about since the start of the case, including from an interview of Dr. Major covering the same ground; and defendant has three retained experts to help him prepare to cross-examine Dr. Heffter. (R. 56 at 5-6.) The Seventh Circuit has explained that Rule 16 provides for several different remedies the district court may adopt in response to discovery violations, with the type of sanction left to the discretion of the court; the court of appeals will reverse only if the defendant was prejudiced, meaning he was unduly surprised and lacked an adequate opportunity to prepare a defense. United States v. Stevens, 380 F.3d 1021, 1026 (7th Cir. 2004). Given the limitations set forth above, and the extent of the notice provided, no prejudice will result in permitting Dr. Heffter's testimony.

**V.**

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 53) is denied, subject to the reservations set forth herein.

Dated at Milwaukee, Wisconsin, this 9th day of February, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[2]In this case, the parties agreed to expert disclosure by December 13, 2021. (R. 40 at 7.) Local Rule 16(a)(4) generally provides for disclosure 15 days before trial.